1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHELLY RICHARD,

                              Plaintiff,

         v.

CAROLYN W. COLVIN, Commissioner of
Social Security, [1]

                              Defendant.

Case No. 3:12-cv-05671-BHS-KLS

REPORT AND RECOMMENDATION

Noted for August 23, 2013

        Plaintiff has brought this matter for judicial review of defendant's denial of her

applications for disability insurance and supplemental security income ("SSI") benefits.  This

matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the

undersigned submits the following Report and Recommendation for the Court's review,

recommending that for the reasons set forth below, defendant's decision to deny benefits be

affirmed.

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security
Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for
Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the
docket accordingly.**

REPORT AND RECOMMENDATION - 1

FACTUAL AND PROCEDURAL HISTORY

On October 21, 2008, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging she became disabled beginning May 12, 2000, due to a torn left and right rotator cuff, a left and right meniscal tear, a cervical strain, a hip injury, back spasms, a low back injury, depression, migraines, and chronic pain. See Administrative Record ("AR") 20, 221.  Both applications were denied upon initial administrative review on January 21, 2009, and on reconsideration on April 24, 2009. See AR 20.  A hearing was held before an administrative law judge ("ALJ") on February 2, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. See AR 39-96. At that hearing, plaintiff amended her alleged onset date of disability to September 7, 2006. See AR 41-42.

In a decision dated March 8, 2011, the ALJ determined plaintiff to be not disabled. See AR 20-34.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on May 25, 2012, making the ALJ's decision the final decision of the Commissioner (the "Commissioner"). See AR 1; see also 20 C.F.R. § 404.981, § 416.1481.  On September 6, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #5.  The administrative record was filed with the Court on November 20, 2012. See ECF #12.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical opinion evidence in the record; (2) in discounting plaintiff's credibility; (3) in assessing plaintiff's residual functional capacity; (4) in evaluating the lay

REPORT AND RECOMMENDATION - 2

witness evidence in the record; and (5) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy.  For the reasons set forth below, however, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision to deny benefits be affirmed.

<u>DISCUSSION</u>

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); <u>see also</u> <u>Batson v. Commissioner of Social Security Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004); <u>Carr v. Sullivan</u>, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation omitted); <u>see</u> <u>also</u> <u>Batson</u>, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record.").  "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting

REPORT AND RECOMMENDATION - 3

1  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

2  I.      The ALJ's Evaluation of the Medical Evidence in the Record

3          The ALJ is responsible for determining credibility and resolving ambiguities and

4  conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

5  Where the medical evidence in the record is not conclusive, "questions of credibility and

6  resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

7  642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v.

8  Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining

9  whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

10  all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

11  within this responsibility." Id. at 603.

12         In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

13  "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this

14  "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

15  stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences

16  "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may

17  draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

18  F.2d 747, 755, (9th Cir. 1989).

19

20

21

22  _____

23  [2] As the Ninth Circuit has further explained:

24         . . . It is immaterial that the evidence in a case would permit a different conclusion than that
           which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by
           substantial evidence, the courts are required to accept them.  It is the function of the
25         [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may
           not try the case de novo, neither may it abdicate its traditional function of review.  It must
26         scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
           rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.    Dr. Seim and Dr. Price

The record contains an evaluation report completed by Robert J. Seim, M.D., in late June 2004, and a state work capacity physician's assessment form completed by Dr. C. Price in mid-July 2004, in which certain physical functional limitations not adopted by the ALJ are assessed.

See AR 25, 292-309.  Plaintiff argues the ALJ erred by failing to address these assessments in her decision.  But as pointed out by defendant, both assessments are dated more than two years prior to plaintiff's amended alleged onset date of disability.  Although plaintiff argues those assessments are "still relevant despite" this fact, she offers no explanation as to how functional limitations assessed back in 2004, are relevant to the period of time under consideration here.  ECF #16, p. 11.  Indeed, neither Dr. Seim nor Dr. Price gave any indication in their opinions that such limitations were expected to last for the more than two years that passed between when they evaluated her and plaintiff's amended alleged onset date of disability.

B.    Dr. Robinson

The record also contains a mental residual functional capacity assessment ("MRFCA") form completed by John F. Robinson, Ph.D., in late April 2009.  In Section I of that form, Dr. Robinson checked boxes indicating he found plaintiff to be moderately limited in several areas of mental functioning.  See AR 436-37.  In Section III of that form, Dr. Robinson also provided a narrative statement in which he opined that plaintiff was "capable of simple & complex tasks," could "persist at tasks in at least 2 h[ou]r intervals throughout an 8 h[ou]r day," should "be limited" with respect to "[i]ntense public contact," would "do best with only superficial and occ[asional] public contact," was "capable of identifying and responding appropriately to normal everyday hazards," and could "travel independently." AR 438.

In her decision, the ALJ found plaintiff could "**perform simple, routine, and some complex tasks that require only occasional contact with the general public**." AR 25 (emphasis in original).  These limitations are consistent with those contained in Section III of the MRFCA form Dr. Robinson completed, and plaintiff does not argue otherwise.  Plaintiff does argue that the ALJ erred by not also adopting the moderate limitations checked by Dr. Robinson

REPORT AND RECOMMENDATION - 6

in Section I of that form.  But again as pointed out by defendant, pursuant to the directive

contained in the Commissioner's Program Operations Manual System ("POMS"), **"[i]t is the**

**narrative** written by the psychiatrist or psychologist **in [S]ection III . . . that adjudicators are**

**to use as the assessment of [the claimant's residual functional capacity (']RFC[']**." POMS

DI 25020.010B.1, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (emphasis in

original).  While is true that the POMS "does not have the force of law," the Ninth Circuit has

recognized it as being "persuasive authority." Warre v. Commissioner of Social Sec. Admin.,

439 F.3d 1001, 1005 (9th Cir. 2006).  Nor does the undersigned find or plaintiff point out any

valid reasons for not following that directive in this case.

      C.    <u>Dr. Heilbrunn and Dr. Hoskins</u>

      The record contains as well a disability evaluation report completed by Mark Heilbrunn,

M.D., in mid-January 2009. <u>See</u> AR 338-44.  With respect to that evaluation report the ALJ

found as follows:

> Consultative examiner Dr. Heilbrunn opined that the claimant could lift and/or
> carry less than 10 pounds occasionally and frequently.  He stated that the
> claimant could stand or walk for 10 minutes uninterrupted up to four hours in
> an eight-hour day, and could sit for at least 30 minutes uninterrupted for up to
> six hours in an eight-hour day.  Dr. Heilbrunn opined that the claimant was
> limited in balancing on the left and could not stoop to floor level, kneel, or
> crouch, but could possibly crawl on an occasional basis.  He stated that the
> claimant would have limitations with both arms in overhead and below
> shoulder-level reaching, but could perform frequent handling, fingering, and
> feeling.  Dr. Heilbrunn stated that the claimant should not work around
> heights (Ex. 5F).  Dr. Heilbrunn's opinion is given weight to the extent that it
> is consistent with sedentary work; however, it is not given significant weight
> as a whole for several reasons.  First, the extent of the limitations assessed are
> not consistent with the longitudinal record.  For example, Dr. Heilbrunn noted
> that the claimant could not lift more than four or five pounds during the
> examination; however, the claimant's performance was subjective and was
> also during an exanimation conducted in connection with her eligibility for
> disability benefits.  It is significant that treatment records do not contain
> findings or observations consistent with that limitation.  In addition, it appears
> that Dr. Heilbrunn relied largely on the claimant's subjective reports regarding

REPORT AND RECOMMENDATION - 7

> her limitations, which are not entirely consistent with the longitudinal
> treatment record, which documents improvement, or with the activities
> discussed above.  Therefore, Dr. Heilbrunn's opinion is given some, but not
> significant weight.

AR 31.  As noted above, an ALJ need not accept the opinion of a physician if it is inadequately supported "by the record as a whole."  See Batson, 359 F.3d at 1195.  In addition, where, as in this case as discussed in greater detail below, the record supports the ALJ in discounting the claimant's credibility concerning his or her subjective complaints, the opinion of a physician premised primarily on such complaints may be discounted as well.  See Tonapetyan, 242 F.3d at 1149; Morgan, 169 F.3d at 601.

Plaintiff argues the limitations concerning bilateral overhead reaching assessed by Dr. Heilbrunn are consistent with the opinions of Dr. Seim and Dr. Price.  But as discussed above, the opinions of Drs. Seim and Price are not relevant to the time period under consideration here. Plaintiff also argues the overhead reaching limitations are consistent with the opinion of Christopher J. Lang, M.D..  Dr. Lang, however, did not assess any actual work-related limitations.  See AR 318-20.  In addition, Dr. Heilbrunn merely opined that plaintiff "would have limitations" with bilateral overhead reaching.  See AR 343.  Given that Dr. Heilbrunn did not further define what he meant by the term "limitations", there is nothing to indicate that the ALJ's own assessed limitation to "**occasional bilateral overhead reaching**" is inconsistent therewith. AR 25 (emphasis in original).

Plaintiff also argues Dr. Heilbrunn's functional assessment is the only such assessment in the record.  But as noted by defendant, another physical functional assessment was provided by Robert G. Hoskins, a non-examining consultative physician, in late April 2009. See AR 345-52, 421.  Plaintiff protests that the initial assessment actually was provided by a non-medical source. While true (see AR 352), that assessment was later affirmed by Dr. Hoskins (see AR 421), thus

REPORT AND RECOMMENDATION - 8

1 | adopting it as his own.   Plaintiff correctly notes Dr. Hoskins indicated that he was affirming an

2 | evaluation dated "1/28/08" (id.), whereas the date on the actual assessment the non-medical

3 | source completed reads "1/20/08" (id.).  It is true there is no evaluation in the record with the

4 | date 1/28/08.  But rather than suggesting Dr. Hoskins was referring to another evaluation report

5 | not in the record, the more reasonable inference is that he merely made a clerical error, and did

6 | intend to affirm the 1/20/08 residual functional assessment.  The undersigned thus finds the ALJ

7 | reasonably read the record as indicating such.  See AR 30; see also Sample, 694 F.2d at 642 (ALJ

8 | may draw inferences "logically flowing from the evidence"); Magallanes, 881 F.2d at 755 (court

9 | 
10 | may draw "specific and legitimate inferences from the ALJ's opinion").

II.  The ALJ's Assessment of Plaintiff's Credibility

11 | 
12 |         Questions of credibility are solely within the control of the ALJ.  See Sample, 694 F.2d at
13 | 
14 | 642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.
15 | In addition, the Court may not reverse a credibility determination where that determination is
16 | based on contradictory or ambiguous evidence.  See id. at 579.  That some of the reasons for
17 | discrediting a claimant's testimony should properly be discounted does not render the ALJ's
18 | determination invalid, as long as that determination is supported by substantial evidence.
19 | Tonapetyan , 242 F.3d at 1148.
20 | 
21 |         To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent
22 | reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what
23 | testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also
24 | Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the
25 | claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear
26 | 

REPORT AND RECOMMENDATION - 9

and convincing." <u>Lester</u>, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. <u>See</u> <u>O'Donnell v. Barnhart</u>, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. <u>See</u> <u>id.</u>

The ALJ in this case discounted plaintiff credibility in part on the basis that her subjective complaints were inconsistent with the objective medical evidence in the record (<u>see</u> AR 26-29), which was a proper basis for doing so, given that as discussed above the ALJ did not err in evaluating that evidence. <u>See</u> <u>Regennitter v. Commissioner of SSA</u>, 166 F.3d 1294, 1297 (9th Cir. 1998).  The ALJ provided other valid reasons for discounting plaintiff's credibility as well.  For example, she noted plaintiff reported doing well in response to conservative medical treatment. <u>See</u> AR 27-28; <u>see also</u> <u>Meanal v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe and claimant's failure to request serious medical treatment for supposedly excruciating pain); <u>Morgan</u>, 169 F.3d at 599 (credibility of claimant may be discounted on basis of medical improvement); <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower level of pain and functional limitation).

The ALJ further found evidence of inconsistent pursuit of treatment for her allegedly disabling impairments. <u>See</u> AR 29; <u>see also</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's in discounting claimant's credibility in part due to lack of consistent treatment,

REPORT AND RECOMMENDATION - 10

and noting fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain).  Lastly, the ALJ pointed to certain inconsistent statements on plaintiff's part that called into question her credibility as well. See AR 30; Smolen, 80 F.3d at 1284 (ALJ may consider claimant's inconsistent statements).  While the undersigned agrees the evidence regarding plaintiff's activities of daily living do not necessarily show she is able to spend a substantial part of the day performing household chores, indicate the presence of transferrable work skills or contradict her other testimony,[3] as discussed above the ALJ provided several other valid reasons for discounting plaintiff's credibility.[4]

III.    The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512.  The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

In terms of the lay witness statement in the record, the ALJ found as follows:

. . . In a statement dated January 27, 2011, the claimant's mother-in-law,

---

[3] See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); Smolen, 80 F.3d at 1284 n.7.

[4] The fact that one of the stated reasons for discounting a claimant's credibility concerning his or her subjective complaints is improper does not render an ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record, as it is in this case for the reasons discussed above. Tonapetyan, 242 F.3d at 1148; see also Bray v. Commissioner of Social Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record").

REPORT AND RECOMMENDATION - 11

1
2
3
4
5
6
7
8
9
10
11
12
13

Leola Richard, stated that the claimant was usually moving so her back did not hurt and her knees did not lock up.  She said that when sitting and eating, writing, or reading, she put her arms on her legs after a short time so that her hands did not shake and get numb.  Ms. Richard stated that the claimant went to her room and lay down for 15 to 30 minutes at a time six or seven times per day.  She said that when standing, the claimant leaned on one leg, and when she was outside or in the store she used Ms. Richard's mobile scooter.  Ms. Richard stated that she or the claimant's son transported the claimant to appointments (Ex. 12E).  Dan Richard, the claimant's spouse, stated that the claimant had numbness and tingling in her right hand and frequently dropped things.  Mr. Richard said that the claimant's knees gave out and she fell down.  He said that the claimant lay down a lot because of back pain (Ex. 13E).  The lay witness statements have been considered and are generally corroborative of the claimant's allegations.  However, the statements are not probative in terms of the ultimate issue of disability in light of the medical evidence and other factors in this case.  It is significant that the lay witnesses likely relied to some degree on the claimant's subjective descriptions of her symptoms and limitations, which are not entirely consistent with the medical evidence, as discussed above.  In addition, the statements cannot outweigh the analysis of the objective medical evidence, as well as the claimant's overall functional abilities.  For these reasons, the lay witness statements are not given significant weight in assessing the claimant's residual functional capacity.

14
15
16
17
18
19
20
21
22
23
24

AR 32.  Plaintiff asserts the lay witness statements "are credible and corroborate her limited daily activities and there [sic] accounts are supported by the longitudinal medical history in this case." ECF #16, pp 19-20.  This argument, however, is entirely lacking in specificity, and thus does not provide a valid basis for overturning the ALJ's findings here.[5]  The ALJ, furthermore, gave at least one germane reason for not adopting the lay witness statements.  See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence constitutes germane reason); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence).

25
26

---

[5] See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's ruling was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

IV.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ found plaintiff had the residual functional capacity:

**. . . to perform sedentary work . . . specifically, to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, to stand and/or walk (with normal breaks) for a total of about two hours in an eight-hour workday, and to sit (with normal breaks) for up to 30 minutes at a time for a total of about six hours in an eight-hour workday.  The claimant needs to stand briefly to alleviate discomfort.  The claimant can**

REPORT AND RECOMMENDATION - 13

**occasionally climb, balance and stoop, and can seldom kneel, crawl, or crouch, but cannot climb ladders, ropes, or scaffolds.  The claimant can perform occasional bilateral overhead reaching and frequent handling and fingering.  The claimant can perform simple, routine, and some complex tasks that require only occasional contact with the general public.**

AR 25 (emphasis in original).  Plaintiff argues that due to the ALJ's alleged errors in evaluating the medical opinion evidence in the record, this RFC assessment lacks validity.  But because as discussed above the ALJ did not err in evaluating that evidence, the ALJ also committed no error in making that assessment.

V.      The Step Five Determination

        If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do.  See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids").  Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

        An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ.  See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

REPORT AND RECOMMENDATION - 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity, except for the limitation to occasional public contact. See AR 84-85.  In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 84-89.  In her decision, the ALJ noted the omission of the occasional public contact limitation, but found the Dictionary of Occupational Titles ("DOT") "does not indicate that the jobs identified by the vocational expert exceed the residual functional capacity for occasional public contact." AR 34.  Based on the testimony of the vocational expert, therefore, the ALJ concluded plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 33-34.

Plaintiff argues that based on the medical opinion evidence and her longitudinal history, she cannot perform the jobs identified by the vocational expert.  As discussed above, however, the ALJ did not err in evaluating the above medical opinion evidence or the other evidence in the record concerning her longitudinal history, such as plaintiff's subjective complaints and the two lay witness statements.  Accordingly, this argument does not provide a valid basis upon which to challenge the ALJ's step five determination.  As for the specific jobs identified by the vocational expert, plaintiff asserts the limitation to occasional public contact eliminates the jobs of call-out operator, surveillance-system monitor and clerical sorter.  The undersigned agrees in regard to the job of call-out operator, as does defendant, as the DOT describes as being "[s]ignificant" speaking to and/or signaling people, and indicates that an individual performing that job uses the telephone to communicate with subscribers. DOT 237.367-014, 1991 WL 672186.

The surveillance-system monitor job also describes as being "[s]ignificant" the area of

REPORT AND RECOMMENDATION - 15

speaking to and/or signaling people. DOT 379.367-010, 1991 WL 673244.  Defendant argues the DOT does not describe for this job a requirement that there be any interaction with the public. The DOT, though, does provide that the job involves notifying the police or "other designated" agencies or authorities by telephone. Id.  It is certainly possible that notifying such outside agencies or authorities by telephone constitutes contact with the public.  If so, the vocational expert's testimony would conflict with the description of the job of surveillance-system monitor contained in the DOT, which the ALJ failed to resolve.[6]  As such, the undersigned finds this job must be eliminated as well.

That leaves the jobs of document preparer and clerical sorter.  Neither job, according to the DOT, involves significant interaction or contact with the public. See DOT 249.587-018, 1991 WL 672349; DOT 209.687-022, 1991 WL 671812.  Plaintiff argues the document preparer and clerical sorter jobs each require frequent reaching.  While true (see DOT 249.587-018, 1991 WL 672349; DOT 209.687-022, 1991 WL 671812), the DOT does not indicate there is any need for reaching overhead, and the ALJ's RFC assessment – in regard to which, as discussed above, plaintiff has failed to show any error – is not inconsistent with the DOT in terms of non-overhead reaching.  The ALJ thus did not err in finding plaintiff could perform those jobs.

Lastly, plaintiff argues the ALJ's assessed limitation that she would need to stand briefly to alleviate discomfort means he is restricted to performing less than the full range of sedentary work, and thus is incapable of performing the prolonged sitting contemplated by the definition of sedentary work.  In so arguing, plaintiff relies on SSR 83-12, which provides in relevant part:

---

[6] The ALJ has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony and information in the DOT. Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704.  Before relying on evidence obtained from a vocational expert to support a finding of not disabled, therefore, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1.  The ALJ also must explain in his or her decision how the discrepancy or conflict was resolved. SSR 00-4p, 2000 WL 189704 *4.

REPORT AND RECOMMENDATION - 16

In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)

There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferrng work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base.

1983 WL 31253 *4.  As noted by defendant, though, the ALJ did consult a vocational expert, who testified that an individual who would need to stand briefly to alleviate discomfort could perform the jobs identified.  See AR 84-89.  As such, the ALJ properly determined plaintiff was not disabled at step five of the sequential disability evaluation process.

## CONCLUSION

For all of the above reasons, the undersigned recommends the Court find the ALJ properly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as well that the Court affirm defendant's decision to deny benefits.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  See Thomas v. Arn,

REPORT AND RECOMMENDATION - 17

1   474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk

2   is directed set this matter for consideration on **August 23, 2013**, as noted in the caption.

3        DATED this 2nd day of August, 2013.

4

5

6

7                                         Karen L. Strombom
                                          United States Magistrate Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 18